**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**CASE NO. X:XX-cv-XXXXX**

**CLASS ACTION**

MSP Recovery Claims, Series LLC, a
Delaware entity,

       Plaintiff,

v.

OneBeacon Insurance Group, Ltd,
Atlantic Specialty Insurance Company,
Homeland Insurance Company of Delaware,
Homeland Insurance Company of New York,
OBI America Insurance Company,
OBI National Insurance Company,

       Defendants.

_____/


**<u>PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES</u>**

Plaintiffs, MSP Recovery Claims, Series LLC ("MSPRC" or "Plaintiff"), a Delaware entity, on behalf of itself and all others similarly situated (the "Class Members"), hereby sues Defendants OneBeacon Insurance Group, Ltd, Atlantic Specialty Insurance Company, Homeland Insurance Company of Delaware, Homeland Insurance Company of New York, OBI American Insurance Company, and OBI National Insurance Company (collectively, the "Defendants"), and alleges:

## INTRODUCTION

1.      Defendants (which are liability insurers) have systematically and uniformly failed to honor their primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "MSP Law"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in accidents (the "accident-related medical expenses") that should have been paid by Defendants but, instead, were paid by Medicare and/or Medicare Advantage Organizations ("MAOs"). As a result, the costs of those accident-related medical expenses have been borne by Medicare and MAOs to the detriment of the Medicare fund and the public.

2.      Plaintiff's Assignors are MAOs that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MAOs provide such services pursuant to contracts with CMS in connection with which CMS pays the MAOs a fixed fee per Enrollee and the MAOs provide, at a minimum, the same benefits to Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees") would receive under traditional Medicare. MAOs stand in the same footing as traditional Medicare, including under the MSP Law which declares that Medicare is a "secondary payer" to all other sources of coverage.  Consequently, if the MAO pays for a service that fell within overlapping insurance maintained by Enrollees with a

primary payer, then the MAO is empowered to recoup from the rightful primary payer.

3.    The overriding purpose of the MSP Law is to ensure that Medicare and MAOs do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers, like the Defendants here. Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with any accident-related injuries and/or treatments, leaving Medicare and MAOs—which are otherwise required to conditionally pay such accident-related medical expenses promptly with the expectation that they will be reimbursed by a primary payer that should have paid such expenses— to unjustly bear the burden and the overwhelming expense of such injuries and treatments.

4.    In addition to their reimbursement obligations, primary payers like Defendants have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer responsibility to the Centers for Medicare and Medicaid Services ("CMS").

5.    Even in the face of the MSP Law's clear legal requirement that primary payers like Defendants pay for accident-related medical expenses, take steps to identify whether their Enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS, primary payers rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MAOs.

6.    In large part, the deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Law by Defendants, and primary payers in general, has been successful in its primary objective – *i.e.*, to pass on accident-related medical expenses to Medicare and MAOs, including Plaintiff's Assignors and the Class Members.

7.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or MAOs.  The private right of action provides for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

8.      Plaintiff utilizes a proprietary system that matches the health care claims data from its Assignors to the publicly available reporting data from CMS and police crash reports available in limited jurisdictions, as well as the claims data made available by primary payers like Defendants, either voluntarily through a coordination of benefits process or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendants fail to honor their obligations under the MSP Law.

9.      As described in detail below, Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failures to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their Enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

10.     This action seeks redress for Defendants' flagrant and systematic failure to comply with the MSP Law.

### **NATURE OF THE ACTION**

11.     This is a class action lawsuit under the MSP Law, arising from Defendants'

systematic and uniform failure to reimburse conditional payments made by Plaintiffs' Assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

12. Defendants' liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendant is obligated to pay for the specific accident-related medical expenses in the first instance under a "no-fault" insurance policy; or (ii) where Defendant has entered into settlement agreements with Medicare beneficiaries as a result of claims arising under liability insurance policies[1] issued by Defendant. This case deals with instances where Defendant has failed to meet its obligations under the MSP Law in the latter of these contexts—*i.e.*, in a settlement context.

13. On behalf of itself and the Class Members, Plaintiff seeks, *inter alia*, double damages under the MSP Law's private cause of action for Defendants' failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period.

14. Defendants have failed to fulfill statutory duties as a primary payer. Specifically, Defendants have systematically and uniformly failed to pay or reimburse conditional payments by Plaintiff and Class Members on behalf of Enrollees for accident-related medical expenses that should have been covered by Defendants. The Enrollees are Medicare beneficiaries who were enrolled in Medicare Advantage health plans offered or managed by Plaintiff's Assignors and Class Members, all of which are MAOs. Plaintiff's Assignors and the Class Members suffered an injury-in-fact from Defendants' failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

15. Plaintiff's Assignors and the putative Class Members provided Medicare benefits

---

[1] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).

to the Enrollees. In numerous instances, the Enrollees suffered injuries related to an accident in connection with which Plaintiff's Assignors and the putative Class Members paid for accident-related medical expenses.[2] Upon Defendants' entry into settlements with the Enrollees as a result of claims arising under liability insurance policies issued by Defendants, Defendants became the primary payer under the MSP Law and either should have paid the accident-related medical expenses or should have reimbursed Plaintiff and the putative Class Members for the conditional payments they made.

16.    Rather than honor its obligations under the MSP Law, Defendants systematically and deliberately took steps to avoid having to pay the accident-related medical expenses paid by Plaintiff's Assignors and the Class Members on behalf of the Enrollees. These steps include failing to report its primary payer responsibility to CMS. Moreover, Defendants fail to coordinate benefits with MAOs, including specifically with Plaintiff on behalf of Plaintiff's Assignors.[3]

17.    Defendants' deliberate non-compliance with its reporting requirements under the MSP Law and refusal to coordinate benefits with MAOs is designed to avoid detection as the primary payer responsible for the accident-related medical expenses incurred by the Enrollees and, ultimately, avoid having to pay or reimburse conditional payments for such accident-related medical expenses.

---

[2] MAOs are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendants. MAOs cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MAOs, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[3] Prior to the filing of this lawsuit, Plaintiff sent correspondence seeking to coordinate benefits with Defendants, as contemplated under 42 C.F.R. 411.25.

18.    Upon information and belief, Defendants have failed to report their primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's Assignors for accident-related medical expenses on behalf of their Enrollees, for which Defendants had a demonstrated responsibility under the MSP Law.

19.    As described in detail below, Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their Enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

20.    Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "MSP System"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[4] to identify claims where Defendants have failed to honor its primary payer responsibility on a class-wide basis.

21.    The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance

---

[4] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in **Appendix 1** to this Complaint. *See also* Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

carrier was a liability provider.

22.    The MSP System captures data from different sources, including data acquired from outside sources like CMS and data found in publicly-available police crash reports, to identify conditional payments made by Plaintiff's Assignors for their Enrollees' accident-related medical expenses, which should have been reimbursed by Defendants. This claims identification process can also be applied class-wide to the data obtained from Class Members.

23.    The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's Assignors' EDI, Class Members' EDI and Defendants' EDI, to discover and identify conditional payments made by Plaintiff's assignors for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made by Defendants. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made by Defendants.

24.    Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendants. Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet its statutory payment and reimbursement obligations, including after Defendants had entered into a settlement.

25.    Plaintiff has identified numerous instances where Defendants admitted, by reporting to CMS, that it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's Assignors in connection with accident-related medical expenses that Defendants should have paid

or reimbursed. A list of such instances is attached hereto as **Exhibit A**.

26.     There are instances where Defendants are also identified in police crash reports[5] as the insurer that was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's Assignors in connection with accident-related medical expenses that Defendants should have paid or reimbursed.

27.     The MSP System also identifies numerous other instances in which Plaintiff's Assignors made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because either (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law or (ii) police crash reports that would identify the appropriate primary payer are not available to Plaintiff in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiff's Assignors' EDI with Defendants' EDI, however, would allow Plaintiff to identify with specificity those conditional payments for which Defendants should have paid the accident-related medical expenses and/or reimbursed Plaintiff's Assignors for their conditional payments, but did not actually do so.

28.     Plaintiff has standing to assert claims for those specific exemplars identified in greater detail below, as well as for the greater universe of instances on which Defendants have failed to pay for accident-related expenses and/or reimburse conditional payments made by Plaintiff's Assignors.

## PARTIES, JURISDICTION AND VENUE

29.     Plaintiff MSPRC is a Delaware series limited liability company with a principal

---

[5] Police crash reports are only publicly available in a handful of jurisdictions, including Florida, Texas, Ohio and Connecticut.

place of business located at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134. Plaintiff MSPRC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of Plaintiff MSPRC.

30.    Plaintiff MSPRC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of Plaintiff MSPRC and pursuant to Plaintiff MSPRC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by Plaintiff MSPRC. Plaintiff MSPRC may receive assignments in the name of Plaintiff MSPRC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, Plaintiff MSPRC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by Plaintiff MSPRC in its own name or it may elect to bring suit in the name of its designated series.

31.    Plaintiff MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to Plaintiff MSPRC.

32.    Series 15-09-147, is a designated series of MSPRC with its principal place of business at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134.

33.    Series 16-05-456, is a designated series of MSPRC with its principal place of business at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134.

34.    Series 16-08-483, is a designated series of MSPRC with its principal place of business at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134.

35.    Onebeacon Insurance Group is a Massachusetts company with its principal place

of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

36. Atlantic Specialty Insurance Company is a New York company with its principal place of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

37. Homeland Insurance Company of Delaware is a Delaware company with its principal place of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

38. Homeland Insurance Company of New York is a New York company with its principal place of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

39. OBI America Insurance Company is a Pennsylvania company with its principal place of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

40. OBI National Insurance Company is a Pennsylvania company with its principal place of business at 605 Highway 169 North Suite 800 Plymouth, MN 55441.

41. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

42. Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Middle District of Florida because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District.

43. This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants conduct business in Florida and have failed to meet their primary payment obligations in this District.

## STANDING ALLEGATIONS

44. Numerous Assignors have assigned their recovery rights to assert the causes of

action alleged in this Complaint to series LLCs of Plaintiff,[6] which maintains the legal right to

sue on behalf of each of its designated series LLCs. Specifically, pursuant to Plaintiffs' limited

liability agreement and Delaware law, all rights arising from the assignment to its series, along

with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

Section 2 of Second Amendment of Limited Liability Company Agreement of MSP Recovery

Claims, Series LLC (amending Section 2.3, entitled "Purpose," to include the language quoted

above) (emphasis added).

45.    As such, Plaintiff has the right and authority to seek reimbursement of Medicare

payments made by the Assignors that should have been paid, in the first instance, by Defendants.

46.    Each of the individual claims set forth herein has been assigned to Plaintiff. The

claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that

would impair Plaintiffs' right to bring this cause of action.

47.    The allegations set forth herein plainly demonstrate that Plaintiff's Assignors

suffered damages as a direct result of Defendants' individual failures to reimburse conditional

payments as required under the MSP Law.

---

[6] The assignments to the various Series of Plaintiff MSPRC are alleged in detail in **Appendix 2** to this Complaint. All of those assignments are valid and binding contracts, and confer standing on Plaintiffs to pursue the claims asserted herein.

48.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

49.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

50.     Once an MAO (or Medicare Payer) makes a payment for medical items and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

51.     The items and services received by and paid on behalf of Plaintiff's Assignors' Enrollees, including M.F., E.S., and N.B. below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

52.     By way of example, Plaintiff sets forth the exemplars below to illustrate Defendants' systematic and uniform failure to fulfill their statutory duties when entering into settlements with Enrollees. In each of these cases, Defendants have reported and admitted their primary payer responsibility for the accident-related medical expenses for medical items and/or services provided to the Enrollees within ten (10) days of the accident and for which Plaintiff's Assignor(s) made conditional payments.

### The Exemplar Settlement Claims

a.  ***The M.F. Claim Demonstrates Plaintiff's Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries***

53.     On November 7, 2016,  M.F. was enrolled in a Medicare Advantage plan issued and administered by Health First Health Plans, Inc. ("HFHP"). HFHPis an MAO.

54.    On November 7, 2016, M.F. was injured in an accident. The tortfeasor responsible for the accident was insured by Onebeacon Insurance Group or one of its related entities under policy number 712008725.

55.    As a direct and proximate result of the accident, M.F. sustained injuries that required medical items and services.

56.    A complete list of the diagnosis codes and injuries assigned to M.F. in connection with M.F.'s accident-related treatment is attached hereto as **Exhibit B**.

57.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to HFHP.

58.    As M.F.'s MAO, HFHP was fully responsible for all medical expenses incurred by M.F.  HFHP paid $339.12 for M.F.'s accident-related medical expenses.  While we allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged HFHP $1,515.06 for M.F.'s  accident-related medical expenses.

59.    Following M.F.'s claim against Defendants' insured, Defendants indemnified its insured tortfeasor and made payments pursuant to a settlement with M.F. By entering into that settlement and releasing all claims, Defendants became a primary payer and subject to liability for M.F.'s accident-related medical expenses.

60.    In fact, Defendants reported and admitted to CMS that it was the primary payer for M.F. Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved.

61.    This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse HFHP. A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit C**.  Despite Defendants' reporting that it was a primary payer, and the

14

corresponding admission that it should have paid for M.F.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

62.    Accordingly, Plaintiffs are entitled to collect double damages against Defendants for its failure to reimburse HFHP's conditional payment for M.F.'s accident-related expenses.

> **b.** ***The E.S. Claim Demonstrates Plaintiff's Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries***

63.    On April 7, 2014, E.S. was enrolled in a Medicare Advantage plan issued and administered by Connecticare, Inc. ("CONC"). CONC is an MAO.

64.    On April 7, 2014, E.S. was injured in an accident. The tortfeasor responsible for the accident was insured by Onebeacon Insurance Group or one of its related entities under policy number 712008620.

65.    As a direct and proximate result of the accident, E.S. sustained injuries that required medical items and services.

66.    A complete list of the diagnosis codes and injuries assigned to E.S. in connection with E.S.'s accident-related treatment is attached hereto as **Exhibit D**.

67.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to CONC.

68.    As E.S.'s MAO, CONC was fully responsible for all medical expenses incurred by E.S.  CONC paid $1,091.3 for E.S.'s accident-related medical expenses.  While we allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged CONC $6,061.33 for E.S.'s accident-related medical expenses.

69.    Following E.S.'s claim against Defendants' insured, Defendants indemnified its insured tortfeasor and made payments pursuant to a settlement with E.S. By entering into that

settlement and releasing all claims, Defendants became a primary payer and subject to liability for E.S.'s accident-related medical expenses.

70.    In fact, Defendants reported and admitted to CMS that it was the primary payer for E.S. Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved.

71.    This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse CONC.  A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit E**.  Despite Defendants' reporting that it was a primary payer, and the corresponding admission that it should have paid for E.S.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

72.    Accordingly, Plaintiffs are entitled to collect double damages against Defendants for its failure to reimburse CONC's conditional payment for E.S.'s  accident-related expenses.

### d. *The N.B. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

73.    On June 31, 2014, N.B. was enrolled in a Medicare Advantage plan issued and administered by Health Insurance Plan of Greater New York ("EHTH"). EHTH is an MAO.

74.    On June 31, 2014, N.B. was injured in an accident. The tortfeasor responsible for the accident was insured by Onebeacon Insurance Group or one of its related entities under policy number 712007367.

75.    As a direct and proximate result of the accident, N.B. sustained injuries that required medical items and services.

76.    A complete list of the diagnosis codes and injuries assigned to N.B. in connection with N.B.'s accident-related treatment is attached hereto as **Exhibit F**.

77.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to EHTH.

78.    As N.B.'s MAO, EHTH was fully responsible for all medical expenses incurred by N.B.  EHTH paid $10, 4917.63 for N.B.'s accident-related medical expenses.  While we allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged EHTH $40, 757.63 for N.B.'s  accident-related medical expenses.

79.    Following N.B.'s claim against Defendants' insured, Defendants indemnified its insured tortfeasor and made payments pursuant to a settlement with N.B. By entering into that settlement and releasing all claims, Defendants became a primary payer and subject to liability for N.B.'s accident-related medical expenses.

80.    In fact, Defendants reported and admitted to CMS that it was the primary payer for N.B.  Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved.

81.    This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse EHTH.  A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit G**. Despite Defendants' reporting that it was a primary payer, and the corresponding admission that it should have paid for N.B.'s  accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

82.     Accordingly, Plaintiffs are entitled to collect double damages against Defendants for its failure to reimburse EHTH's conditional payment for N.B.'s  accident-related expenses.

## **CLASS ALLEGATIONS**

83.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 21, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-

related medical expenses, when Defendants should have made those payments as primary payer and should have reimbursed the Class Members.

84.    As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case, thus, is well suited for class-wide resolution.

85.    Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

86.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

   a.    **<u>Numerosity</u>**: Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs and first tier entities (including its assignees) throughout the United States who were not reimbursed by Defendants after it entered into a settlement with a Medicare beneficiary enrolled in a Medicare Advantage plan administered by an MAO. Thus, the numerosity element for class

certification is met.

b.  **Commonality**: Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to make reimbursement payments, report settlements and report their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse the Assignors pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c.  **Typicality**: Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because

Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their settlements or their contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendants' failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendants' legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities would could be accomplished by direct communication.

87.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendants, deliberately or not, failed to make required payments under

the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

88. It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

89. Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated Assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

90. Administering the proposed Damages Class will be relatively simple. Defendants

provided no-fault policies with claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff can determine which of the policy holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payer and (2) for which reimbursement was not made.

## CLASS DEFINITION

91.    The putative class (hereinafter referred to as "Class Members") is defined as:

### Settlement Class

All Medicare Advantage Organizations (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical expenses where Defendants:

(1) are the primary payer by virtue of having settled a claim with a Medicare beneficiary enrolled in a Medicare Advantage plan;

(2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and

(3) failed to reimburse Medicare Advantage Organizations (or their assignees) the payments provided for medical items and services related to the claims settled by the primary payer.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

92.    All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

## CAUSES OF ACTION

93.    Plaintiff's claims result from Defendants' failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendants issue liability insurance policies and is thus a primary payer liable under the

MSP Law.

**COUNT I**
**Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)**

94.     Plaintiff incorporates by reference paragraphs 1through 104 of this Complaint.

95.     Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

96.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendants' status as a primary plan; (2) the Defendants' failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

97.     Defendants' no-fault policies are primary plans, which rendered the Defendants a primary payer for accident-related medical expenses.

98.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's Assignors paid for items and services which were also covered by no-fault policies issued by Defendants.

99.     More specifically, Defendants entered into settlements with Enrollees relating to accidents, but failed to reimburse Plaintiff's Assignors and the putative Class Members for accident-related medical expenses paid by Plaintiff's Assignors and the putative Class Members on behalf of the Enrollees. Defendants are liable for reimbursement of these accident-related medical expenses even if they subsequently paid out the maximum benefits under the policies.

100.     Because the Defendants are a primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Law.

101.     Defendants were required to timely reimburse the Assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42

C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

102.    Plaintiff and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

103.    Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders or claimants under their liability policies upon the shoulders of Plaintiff's Assignors and the Class members.

104.    In this case, Defendants failed to administratively appeal the Assignors' rights to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

105.    Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## JURY TRIAL DEMAND

106.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

      a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

      b.  designate Plaintiff as representative for the respective Class Members and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

      c.  issue a judgment against Defendants that:

      i.       grant Plaintiff and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

      ii.      grant Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

      iii.    grant Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 30, 2020.

 

*/s/ Francesco Zincone*
Francesco Zincone
Fla. Bar No. 100096
**ARMAS BERTRAN PIERI**
4960 S.W. 72nd Avenue, Suite 206
Miami, FL 33155
Telephone: 305-461-5100
E-mail: fzincone@armaslaw.com
*Lead Counsel for Plaintiff*

## APPENDIX 1

### CMS' Standard for Storing Digital Health Insurance Claims Data

1.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

     a.  The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

     b.  The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

     c.  Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.     Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

     a.  Dates (including dates of service): the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i.  According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.[7]

    ii.  The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[8], 2011[9], 2012[10], 2013[11], 2014[12], and 2016.[13]

    iii.  CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[14]

---

[7] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[9] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[12] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[13] Medicare Plan Payment Group Enterprise Systems Solutions Group Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[14] CMS.gov. Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

    iv.  The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.  In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

  b.  <u>Medical Diagnosis and Procedure Codes</u>:

    i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[15][16]

---

[15] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[16] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

ii.  International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015, or ICD-10 CM if the date of services is on or after October 1, 2015

iii.  Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv.  Current Procedural Terminology ("CPT") - CPT[17] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[18]

v.  Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and

---

[17] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[18] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

similar costs.[19]

    vi.   Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[20]

    vii.   The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

    viii.   The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

---

[19] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[20] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

1

# APPENDIX 2

1. On March 20, 2018, CONC irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC and to MSP Recovery, LLC, a Florida Limited Liability Company (the "ConnectiCare Assignment"). The ConnectiCare Assignment is attached hereto as **Exhibit H**, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable.
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

**Ex. H**.

2. On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the ConnectiCare Assignment to Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC (the "Connecticare Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 15-09-157, which was ratified and approved by CONC,[21] is attached hereto as **Exhibit I** and states:

> . . . MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC, a Delaware Series

---

[21] By letter dated September 25, 2018, a copy of which is attached hereto as **Exhibit J**, Connecticare confirmed its approval of the Connecticare Series Assignment.

Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets", "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement.

**Ex. I**.

3.      Effective April 28, 2016, Health First Health Plans, Inc. ("HFHP"), a Medicare Advantage Organization, irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to MSP Recovery, LLC ("HFHP Assignment"). The HFHP Assignment is attached hereto **Exhibit K**, and expressly provides, in pertinent part:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto . . . all of which shall constitute the "Assigned Claims."

The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

**[Ex. K**, HFHP Assignment at 1-2].

4.      Effective June 12, 2017, MSP Recovery, LLC assigned all rights acquired under the Recovery Agreement to Plaintiff's designated series, Series 16-05-456 (the "HFHP Series Assignment"). The HFHP Series Assignment is attached hereto as **Exhibit L** and states:

…each undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", "Claims" (and all proceeds and products thereof, including any related assigned assets and assigned documents) as such terms are defined in and contained

in that certain [HFHP Assignment] . . .

5.      On March 20, 2018 EHTH irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 16-08-483, a designated series of Plaintiff MSPRC and to MSP Recovery, LLC, a Florida Limited Liability Company (the "EHTH Assignment"). The EHTH Assignment is attached hereto as **Exhibit M**, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable.
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

**Ex. M**.

6.      The "Medicare Recovery Claims" assigned to Plaintiff MSPRC include EHTH's "legal and equitable rights to seek reimbursement and/or recovery from primary payers . . . responsible to [EHTH] directly or through rights conferred on [EHTH] pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [HIPGNY's] Medicare (as defined above) Enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for the reimbursement of payments made by [EHTH] . . . pursuant to a Medicare Advantage Plan . . . ." *Id.* at p.1.

7.      The "Assigned Medicare Recovery Claims" included the above-referenced

Medicare Recovery Claims, but excluded "Medicare Recovery Claims that [could] be asserted against Assignor's members, Enrollees and/or contracted providers" and Medicare Recovery Claims that as of March 20, 2018 (the Effective Date of the agreement) had been assigned to and/or were being pursued "by other recovery vendors, including, but not limited to, The Rawlings Group" for services rendered within a defined six-year time period. *Id*. at p.1. These excluded claims are defined in the EHTH Assignment as "Assignor Retained Claims." *Id*., § 2(a).

       8.      With the exception of the Assignor Retained Claims, the EHTH Assignment expressly provides that:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable…
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

*Id*., § 2(b).

       9.      The Assigned Medicare Recovery Claims include the right to pursue and recover payments made by EHTH on behalf of the Enrollees identified in **Exs. F and G**.

       10.     To confirm that Enrollees were not one of the Assignor Retained Claims, Plaintiffs reviewed all carve-out lists provided by EHTH with their claims data. The carve-out lists were provided by EHTH to identify the Assignor Retained Claims (i.e., the specific claims of Enrollees excluded from being pursued by Plaintiffs). The Enrollees' claims are not included on EHTH's carve-out lists. Therefore, the Enrollees' claims are not an Assignor Retained Claim under the EHTH Assignment.

11.    On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the EHTH Assignment to Series 16-08-483, a designated series of Plaintiff MSPRC ("EHTH Series Assignment"). The EHTH Series Assignment from MSP Recovery, LLC to Series 16-08-483, which was ratified and approved by EHTH, is attached hereto as **Exhibit N** and states:

> . . . MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC, a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets", "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement.

**Ex. N**.